UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOMINIQUE JONES,

        Plaintiff,

        v.

ANN BENION, et al.,

        Defendants.
                                    /

CASE NO. 2:10-CV-12360-DT
JUDGE AVERN COHN
MAGISTRATE JUDGE PAUL KOMIVES

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (docket #22, #23, & #41)

I.    RECOMMENDATION: The Court should grant defendants' three pending motions for summary judgment.

II.    REPORT:

A.    *Background*

Plaintiff Dominique Jones, a state prisoner, commenced this civil rights action pursuant to 42 U.S.C. § 1983 by filing a *pro se* complaint on June 15, 2010. Defendants are prison officials Ann Benion, Kenneth Ashwood, Kevin Morgel, and Gregory Skipper. With one exception which is discussed in the Analysis section of this Report, the facts are undisputed.

Plaintiff, while incarcerated at the Ryan Correctional Facility (RRF) and Cooper Street Correctional Facility (JCF), participated in various rehabilitation programs, including the Residential Sexual Offender Program (RSOP) and Residential Substance Abuse Treatment (RSAT). On April 24, 2009, the Michigan Parole Board conditionally granted parole to plaintiff, with a projected parole release date of August 29, 2009. This decision was "contingent upon the successful

completion of MPRI In Reach Phase." Pl.'s Aff., Ex. A.  On July 30, 2009, the Board deferred action on plaintiff's parole, having "determined that additional pre-release programming is required before [plaintiff's] release.  Meanwhile on June 26, 2009, while incarcerated at RRF, plaintiff commenced the InReach phase of his rehabilitation program.  *See id*., ¶¶ 7-8 & Exs. B-C.  Plaintiff was subsequently transferred to JCF, where he was approved for participation in both the RSOP and InReach.  *See id*.  On October 15, 2009, plaintiff was stabbed by another inmate.  *See* Compl., ¶ 6; Pl.'s Aff., ¶ 9 & Ex. D.  Because plaintiff was unable to identify his assailant, he was immediately transferred to the Parnell Correctional Facility (SMT) for his own protection.  *See* Compl., ¶¶ 7, 12; Pl.'s Aff., ¶ 9.  This transfer resulted in plaintiff's termination from the RSOP on October 16, 2009. *See id*., Ex. G.

On October 30, 2009, the Board issued a Notice of Decision indicating that it was "suspending the parole action . . . to consider information reviewed by the Parole Board after the original parole release decision."  The Notice indicated that plaintiff "refused to participate in the RSOP program on 10/16/09," and that parole was suspended for the reason of "Program Failure/Drop/Refusal."  *Id*., Ex. F.  On December 8, 2009, the Board issued another Notice of Decision, imposing a 24 month continuance on plaintiff's parole consideration.  The reason for this action was summarized as: "REMOVED FROM RSOP.  P needs to complete recommended programming."  *Id*., Ex. 10.[1]

After attempting to resolve matters through grievances and letters to the Board, plaintiff commenced this action raising claims under the Eighth and Fourteenth Amendments.  Plaintiff

---

[1]The exhibits attached to plaintiff's affidavit are first identified by letter, but switch over to identification by number.

contends that defendants' actions resulted in his being given a 24 month continuance rather than being released on parole, amounting to cruel and unusual punishment and a denial of due process and equal protection. Plaintiff seeks injunctive relief requiring defendants to correct a false statement in the removal form that he refused to participate, was well as compensatory and punitive damages. The matter is currently before the Court on defendants Benion and Morgel's motion for summary judgment, filed on October 15, 2010 (docket #22); defendant Ashwood's motion to dismiss or alternatively for summary judgment, filed on October 15, 2010 (docket #23); and defendant Skipper's motion for summary judgment, filed on April 1, 2011 (docket #41).[2] Each motion argues that defendants are entitled to summary judgment because: (1) plaintiff failed to properly exhaust his administrative remedies; (2) their alleged actions did not violate plaintiff's Eighth or Fourteenth Amendment rights; and (3) they are entitled to qualified immunity. Plaintiff filed a response, titled a motion to amend, on October 25, 2010.[3] Further, on November 1, 2010, plaintiff filed an affidavit in support of his claims, with attached exhibits. Defendant Ashwood filed a reply on December 3, 2010, and plaintiff filed a surreply on December 13, 2010.

B.  *Legal Standard*

Under Rule 56, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."

---

[2]Also pending before the Court are plaintiff's motions to amend, to strike the affidavit of Richard Stapleton, and for appointment of counsel. These motions are addressed in a separate order entered on this date.

[3]As explained in the Order denying plaintiff's motion to amend entered on this date, the document submitted by plaintiff does not assert any new allegations or claims for relief, but rather responds to the arguments raised in defendants' motions for summary judgment.

FED. R. CIV. P. 56(c).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248).  In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor.  *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact.  Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325.  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).

To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue.  As the Supreme Court has explained:

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Thus, "[t]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*, 344 F.3d at 613.

C.   *Analysis*

Plaintiff is unable to demonstrate a genuine issue of material fact with respect to whether defendants' alleged actions violated his constitutional rights, and thus defendants are entitled to summary judgment.[4]

   1.   *Due Process*

The Due Process Clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law[.]" U.S. CONST. amend XIV, § 1. By its terms, therefore, the particular procedures required by the clause apply only to deprivations of "life, liberty, or property;" they do not apply to deprivations of other interests. *See Board of Regents v. Roth*, 408 U.S. 564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."). In this case, petitioner has no liberty or property interest in being released on parole or in participating in prison programs, and thus the Due Process Clause does not require the state to follow any particular

---

[4]Because I conclude that defendants are entitled to summary judgment on the merits of plaintiff's claims, it is not necessary to consider defendants' argument that plaintiff has failed to exhaust his administrative remedies. *See* 42 U.S.C. § 1997e(c)(2) (court may dismiss claim on the merits without first requiring exhaustion). Likewise, it is unnecessary to consider defendants' argument that they are entitled to qualified immunity. *See Papierz v. Jackson*, 339 Fed. Appx. 587, 591 (6th Cir. 2009) ("Because Papierz's Section 1983 claim fails under the Fourth Amendment, we find it unnecessary to reach the issue of qualified immunity."); *Smith v. Parker*, 7 Fed. Appx. 432, 435 n.3 (6th Cir. 2001) ("As Smith's claims are without merit, a qualified immunity inquiry is unnecessary.").

procedures.

"A liberty interest can arise in one of two ways: (1) from the Due Process Clause itself; or (2) from a state or federal statute." *Ho v. Greene*, 204 F.3d 1045, 1058 (10th Cir. 2000). *See generally*, *Sandin v. Conner*, 515 U.S. 472, 477-87 (1995). As to the first, of its own force "[t]he [D]ue [P]rocess [C]lause does not guarantee an inmate a right to parole." *Marshall v. Mitchell*, 57 F.3d 671, 672 (8th Cir. 1995); *accord Greenholtz v. Inmates of Neb. Penal & Correctional Complex*, 442 U.S. 1, 7 (1979); *Mayberry v. Hudson*, No. 92-2358, 1993 WL 147575, at *1 (6th Cir. May 5, 1993) (citing *Greenholtz* and *Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987)). Thus, petitioner has a protected liberty interest only if Michigan law creates such an interest. In the parole context, whether a state law creates a protected liberty interest "turn[s] on the presence or absence of language creating 'substantive predicates' to guide discretion." *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 462 (1989). Thus, to create a liberty interest the regulations at issue must "contain 'explicitly mandatory language,' *i.e.*, specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow[.]" *Id.* at 463; *accord Marshall*, 57 F.3d at 672. Under Michigan law, "a prisoner's release on parole is discretionary with the parole board." MICH. COMP. LAWS § 791.234(8); *see also*, *People v. Moore*, 164 Mich. App. 378, 387-88, 417 N.W.2d 508, 512 (1987). Thus, "Michigan's state statutes do not create an explicit entitlement to parole," and thus do not give rise to a protected liberty interest. *White v. Kelly*, 82 F. Supp. 2d 1184, 1189 (D. Colo. 2000) (considering federal prisoner's challenge to denial of parole hearing by Michigan authorities); *accord Mayberry*, 1993 WL 147575, at *1 (same); *Canales v. Gabry*, 844 F. Supp. 1167, 1171 (E.D. Mich. 1994) (Gilmore, J., adopting Report of Morgan, M.J.) (same); *cf. Marshall*, 57 F.3d at 672-73. As the Sixth Circuit has explained:

> After *Olim* [*v. Wakinekona*, 461 U.S. 238 (1983)] and *Inmates* [*of Orient Correctional Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233 (6th Cir. 1991)], it became clear that procedural statutes and regulations governing parole do not create federal procedural due process rights[.] . . . The Michigan procedural limitations do not detract from the broad powers of the Michigan authorities to deny parole. So long as the parole discretion is broad, as in Michigan, "the State has not created a constitutionally protected liberty interest" by enacting procedural rules. *Olim*, 461 U.S. at 249. The parole authorities of the State of Michigan may have been required to follow their own procedural statutes and regulations on parole . . . as a matter of *state* law, but there is not now any viable legal theory by which Michigan state authorities are required to follow such rules as a matter of *federal* due process.

*Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc) (footnote and parallel citation omitted) (emphasis in original); *see also*, *Foster v. Booker*, 595 F.3d 353, 368 (6th Cir. 2010); *Moore v. Hofbauer*, 144 F. Supp. 2d 877, 882 (E.D. Mich. 2001) (Tarnow, J.); *Glover v. Michigan Parole Bd.*, 460 Mich. 511, 520-21, 596 N.W.2d 598, 603-04 (1999).

Likewise, plaintiff has no constitutional right to participate in any prison rehabilitation programs. It is well established that "[p]risoners have no constitutional right to rehabilitation, education, or jobs." *Argue v. Hofmayer*, 80 Fed. Appx. 427, 429 (6th Cir. 2003) (citing *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981)); *see also*, *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976). Thus, "participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee." *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996).

In the absence of a liberty or property interest protected by the Due Process Clause, no process is due and even wholly arbitrary actions by state officials are insufficient to establish a due process violation. *See Zorzi v. County of Putnam*, 30 F.3d 885, 895 (7th Cir. 1994); *Carter v. McCaleb*, 29 F. Supp. 2d 423, 429 (W.D. Mich. 1998) ("In the absence of a liberty interest, no

process is *constitutionally* due.").[5] Because plaintiff has no constitutional right to either participate in the RSOP or to parole, he cannot show that his termination from the RSOP and the Board's subsequent reliance on his failure to complete the RSOP deprived him of due process of law. *See Allen v. Rubitschun*, No. 4:06-cv-148, 2007 WL 951383, at *1 (W.D. Mich. Mar. 27, 2007) (because there is no right to rehabilitative programming or parole, plaintiff failed to state due process claim against prison officials who denied him access to rehabilitative program which resulted in Board's subsequent denial of parole based on his failure to complete the program).

Nor can plaintiff show that he was denied his due process rights by defendants' alleged provision of inaccurate information to the Board. Reliance on inaccurate information by the Board in denying parole did not violate plaintiff's constitutional rights, *see Caldwell v. McNutt*, 158 Fed. Appx. 739, 741 (6th Cir. 2006), and in the absence of a protected liberty interest there is no due process violation even by state officials' deliberate lies. *See Sullivan v. Brown*, 544 F.2d 279, 282 (6th Cir. 1976) (citing *Bishop v. Wood*, 426 U.S. 341, 349 n.1 (1976)) ("Without a 'property' or 'liberty' interest protected by the due process clause, plaintiff would have no federally protected right, even if it be assumed that the statement of reasons or charges placed in her personnel file were

---

[5]As the Supreme Court has recognized, the Due Process Clause protects "both substantive and procedural rights." *Albright v. Oliver*, 510 U.S. 266, 277 (1994) (plurality op.). "So called 'substantive due process' prevents the government from engaging in conduct that 'shocks the conscience,' or interferes with rights 'implicit in the concept of ordered liberty.' When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner. This requirement has traditionally been referred to as 'procedural' due process." *United States v. Salerno*, 481 U.S. 739, 746 (1987) (citations omitted). It appears that plaintiff is raising a procedural due process challenge, but neither his complaint nor his affidavit makes this entirely clear. In any event, the requirement of a protected liberty interest is the same under either due process theory: "to establish a violation of either substantive or procedural due process, plaintiff must initially show that []he was deprived of a property or liberty interest." *Gordon v. Nicoletti*, 84 F. Supp. 2d 304, 308 (D. Conn. 2000); *see also, Sanchez v. Township of Kochville*, No. 09-CV-12076, 2010 WL 5648528 (E.D. Mich. Oct. 14, 2010) (recommendation of Binder, M.J.), *magistrate judge's report adopted*, 2011 WL 281053 (E.D. Mich. Jan. 25, 2011) (Luddington, J.).

false."); Oliver v. Morris, No. 6:06cv286, 2007 WL 869562, at *12 (E.D. Tex. Mar. 20, 2007) ("Even if the Defendants in this lawsuit relied on false information in recommending that Oliver be moved out of safekeeping, this is not a constitutional violation because Oliver had no protected liberty or property interest in his custodial classification.").

The Sixth Circuit has recognized that "[a] prisoner has a limited right to have erroneous information expunged from his prison file." *Johnson v. CCA-Northeast Ohio Correctional Center Warden*, 21 Fed. Appx. 330, 332 (6th Cir. 2001) (citing *Paine v. Baker*, 595 F.2d 197, 201 (4th Cir.1979)). However, to be entitled to relief on such a claim "[t]he prisoner must establish that: 1) certain information is in the prison file; 2) the information is false; and 3) the information is relied on to a constitutionally significant degree." *Id*. Here, plaintiff cannot make this showing. Plaintiff contends that the defendants falsely stated that he was terminated from the RSAT based on his refusal to participate. In support of this claim, plaintiff provides a copy of the RSAT Removal Form, which states, as the reason for removal, "*Refused to participate then* Transferred to SMT - claims he was assaulted on the yard - small puncture wound to shoulder 10-15-09." Pl.'s Aff., Ex. E (emphasis added). However, attached to his affidavit is an identical copy of the removal form, except that the emphasized language "Refused to participate then" does not appear. On the first copy of the form which plaintiff provides, as on the second form, the line begins "Transferred to SMT . . . ;" the "Refused to participate" language appears above this sentence, and in a different handwriting. It is unclear when, and by whom, this additional language was added to the Removal Form. Even assuming, however, that the language was added by one or more of the defendants and that the statement is false, defendants are still entitled to judgment as a matter of law because plaintiff has failed to show that the information was "relied on to a constitutionally significant

degree," for two reasons. First, "[b]ecause plaintiff has no liberty interest in being paroled, he cannot show that the false information was relied on to a constitutionally significant degree." *Spencer v. Atterberry*, No. 1:10-cv-735, 2011 WL 65866, at *6 (W.D. Mich. Jan. 10, 2011). Second, the Board's Notices make clear that it was not plaintiff's purported "refusal" to participate, but his failure to complete the required programming that resulted in his parole continuance. In other words, it was the fact of plaintiff's failure to complete the RSAT and RSOP, rather than the reason for that failure, which caused the Board to continue his parole. Thus, for example, the December 8, 2009, Notice which imposed the 24 month continuance did not state that plaintiff refused to participate in the explanation of reasons for the Board's actions, but only stated that plaintiff had been "removed from RSOP" and that he "needs to complete recommended programming." Pl.'s Aff., Ex. 10. And the earlier Notice of Action dated July 30, 2009, which deferred the Board's earlier conditional grant of parole and which predated the events at issue here, explicitly stated that the Board "has determined that additional pre-release programming is required before your release. The date will be determined upon notice of satisfactory completion of programming." *Id.*, Ex. B. As these Board decisions make clear, the 24 month continuance was not based on plaintiff's failure to participate in, but rather on the lack of satisfactory completion of, the required rehabilitative programming. And the reason behind plaintiff's lack of completion was irrelevant to the Board's decision. Thus, even if defendants falsely stated that plaintiff failed to participate in the RSOP or RSAT, they are entitled to summary judgment because plaintiff has failed to provide any evidence showing that the allegedly false information was relied upon to a constitutionally significant degree.

In short, plaintiff has failed to show that defendants' alleged actions implicated any liberty interest protected by the Due Process Clause. Accordingly, defendants are entitled to summary

judgment with respect to plaintiff's due process claim.

    2.     *Equal Protection*

In his complaint plaintiff also asserts, without elaboration, that defendants' actions deprived him of the equal protection of the law. The Court should conclude that defendants are entitled to summary judgment on this claim.

"An equal protection claim must assert that the plaintiff suffered class-based discrimination." *Herron v. Harrison*, 203 F.3d 410, 416 (6th Cir. 2000) (citing *McClesky v. Kemp*, 481 U.S. 249, 292 (1987)). Thus, "[t]o state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990). Suspect and quasi-suspect classes under the Equal Protection Clause include those based on race, religion, alienage, national origin, ancestry, gender, and illegitimacy. *See Owens v. Ventura County Super. Ct.*, 42 F. Supp. 2d 993, 998 (C.D. Cal. 1999). Here, plaintiff does not allege, either in his complaint or in his affidavit, that defendants' actions were the result of any racial or other class-based animus, as required to state an equal protection claim. *See Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997) (citing *Washington v. Davis*, 426 U.S. 229, 238-42 (1976)); *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1269 (10th Cir. 1989) (citing *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977)). Plaintiff "has failed to allege that he is a member of a suspect class, or state how he was treated differently from others similarly situated." *Porter v. Soice*, 24 Fed. Appx. 384, 387 (6th Cir. 2001). Plaintiff's "conclusory allegations without any factual support fail[] to state an equal protection claim." *Turnboe v. Gundy*, 25 Fed. Appx. 292, 293 (6th Cir. 2001). Accordingly, the Court should conclude that defendants

11

are entitled to summary judgment with respect to plaintiff's equal protection claim.

       3.      *Eighth Amendment*

Finally, in his complaint plaintiff contends, again without elaboration, that defendants' actions amounted to cruel and unusual punishment in violation of the Eighth Amendment. The Court should conclude that defendants are entitled to summary judgment on this claim. It is well established that "[d]enying parole and requiring an inmate to serve his entire sentence is punishment, but it does not constitute cruel and unusual punishment. The denial of parole is a disappointment rather than a punishment of cruel and unusual [pro]portions." *Leach v. Owens*, No. 2010 WL 5266063, at * (W.D. Tex. Dec. 15, 2010) (citations omitted) (citing *Baumann v. Arizona Dep'' of Corrections*, 754 F.2d 841, 846 (9th Cir.1985); *Craft v. Texas Bd. of Pardons and Paroles*, 550 F.2d 1054 (5th Cir.1977)); *see also*, *Farid v. Bouey*, 554 F. Supp. 2d 301, 323 (N.D.N.Y. 2008). Likewise, "[t]he law is clear that limitations on, or the denial of, . . . rehabilitation programs do not inflict unnecessary or wanton pain and therefore do not constitute cruel and unusual punishment." *McQuillion v. Rushen*, 639 F. Supp. 420, 424 (N.D. Cal. 1986); *see also*, *Gawloski v. Dallman*, 803 F. Supp. 103, 112 (S.D. Ohio 1992). Therefore, neither plaintiff's removal from the RSOP nor the subsequent 24 month continuance of his sentence raises a claim under the Eighth Amendment. *See Moore v. Michigan Dept. of Corrections*, No. 1:07-cv-756, 2007 WL 3124649, at *3 (W.D. Mich. Oct. 25, 2007).

D.      *Conclusion*

In view of the foregoing, the Court should conclude that defendants are entitled to judgment as a matter of law on plaintiff's due process, equal protection, and Eighth Amendment claims. Accordingly, the Court should grant defendants' motions for summary judgment.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

<div style="text-align:right">
s/Paul J. Komives<br>
PAUL J. KOMIVES<br>
UNITED STATES MAGISTRATE JUDGE
</div>

Dated: 5/13/11

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on May 13, 2011.

s/Eddrey Butts
Case Manager